### WILSON *v.* WRIGHT.

TRUSTS — ARBITRATION AGREEMENT — SETTLEMENT — PROMISSORY NOTES—TRANSFER AFTER MATURITY.

> Defendant agreed to hold certain money in trust, pending a decision by arbitrators as to whether it should be paid to complainant or to the holder of a specified promissory note. The arbitration failed, and defendant made a full settlement with the holder of the note, who was *prima facie* entitled to the fund, and was by him released from all liability. Complainant afterwards purchased the note, which was then past due, and filed a bill to establish his right to the fund. *Held,* that he had made no case.

Appeal from Saginaw; Wilber, J. Submitted February 4, 1898. Decided March 29, 1898.

Bill by Charles M. Wilson, receiver of the First National Bank of Mt. Pleasant, against Ammi W. Wright and others, to enforce an alleged trust. From a decree dismissing the bill, complainant appeals. Affirmed.

The bill in this case was filed to enforce a trust based upon the following instrument.

"MT. PLEASANT, MICH., July 9, 1889.

"For a valuable consideration to us paid, we agree with the First National Bank of Mt. Pleasant, I. A. Fancher, John A. Harris, P. F. Dodds, F. W. Carr, and P. S. Fancher, to hold the sum of $2,447.90, to await the result of the arbitration now pending between Leaton & Upton and William N. Brown and Brown & Leaton, and, if the finding of the arbitrators be in favor of Leaton & Upton, we agree to pay said sum of money, or so much thereof as may be necessary, to retire the following described notes now held by said bank, viz.: One-half note, January 17, 1889, made by P. S. Fancher, and indorsed by I. A. Fancher and F. W. Carr, $1,000; one-half note, December 15, 1888, made by I. A. Fancher, and indorsed by D. Scott Partridge, $500; and one note July 9, 1889, by I. A. Fancher and John A. Harris, and indorsed by P. F. Dodds, $2,107.22.

"WELLS, STONE & CO.,
"Per Sharp."

Contemporaneously therewith, or a few days previous, an agreement of arbitration had been signed by the parties mentioned in the above instrument.

The bill sets forth these instruments, and further alleges that the firm of Leaton & Upton, which was engaged in lumbering, became financially embarrassed, and transferred all its property to I. A. Fancher, as trustee; that Fancher, as trustee, conveyed certain lands to the firm of Brown & Leaton for $36,000; that this money was obtained from Wells, Stone & Co., and was to be applied in payment of balances due upon contracts of Leaton & Upton, and to certain indebtedness of Leaton & Upton held by the Commercial Bank, by complainant, and other small creditors; that Brown & Leaton at the same time, by deed, conveyed the lands to Wells, Stone & Co., to secure them for the loan of $36,000; that Wells, Stone & Co. paid a part of the indebtedness due complainant, and the entire amount due said Commercial Bank, from Leaton & Upton, except two notes, the subject of this controversy. The

bill then sets forth the controversy as to the items involved in these notes. Leaton & Upton claimed that one item was a note made by them for the accommodation of Brown & Leaton, who ought to pay it. Leaton & Upton also claimed that Brown was indebted to them for lumber sold; that this indebtedness was once represented by a draft, drawn by Leaton & Upton upon Brown, which he failed to pay, and was afterwards included in a note of Leaton & Upton to the Commercial Bank. Leaton & Upton claimed that these two amounts should be allowed them, and paid by Wells, Stone & Co. out of the $36,000. It is alleged that it was agreed by Leaton & Upton, Brown & Leaton, William N. Brown, Wells, Stone & Co., and the Commercial Bank that the dispute about such liability should be submitted to arbitration; that Wells, Stone & Co. should retain in their hands the sum of $2,447.90 pending such arbitration, and should pay to complainant such sums as should be found thereby due to said Leaton & Upton from Brown & Leaton and from Brown; that the arbitration failed, and nothing was accomplished under it; that these two notes were held by the Commercial Bank, and, at the request of said bank, were renewed by giving two other notes; that, subsequently, Stella G. Leaton became the owner of one of said notes, and one Minnie K. Brown the owner of the other; that complainant purchased said notes on January 31, 1895, of Mrs. Leaton and Mrs. Brown, and thereby became the owner and entitled to the proceeds of the same; that said sum of $2,447.90 still remains in the hands of Wells, Stone & Co. in trust for the payment of said indebtedness. The prayer is for a decree against Mr. Wright, the survivor of Wells, Stone & Co., for the amount of this fund.

The answer of Mr. Wright denies any trust relation or any participation by Wells, Stone & Co. in the transaction between Leaton & Upton, through Fancher, trustee, and Brown & Leaton, except that they agreed to loan Brown & Leaton the money necessary to make their contemplated purchase from Leaton & Upton, and did so, taking secur-

ity from Brown & Leaton therefor; that because of Mr.
Wright's interest as president and a stockholder in the
Commercial Bank, which had a large amount of Leaton
& Upton paper, and the representation of Brown &
Leaton, among other things, that such paper should be
taken up out of the proceeds of such loan, Wells, Stone &
Co. were induced to make the loan, and were desirous of
having the money loaned by them paid out in such man-
ner as would secure the release of Leaton from Leaton
& Upton indebtedness, and in having the Commercial
Bank relieved of the Leaton & Upton paper, and that, in
making such payment, Wells, Stone & Co. only acted
under the direction of Brown & Leaton, and as agents of
Brown & Leaton, and did not undertake or assume any
responsibility for the application of the money, or put
themselves under any obligations to any other persons than
Brown & Leaton, and, so acting, paid out to and for
Brown & Leaton even more than the amount which they
had agreed to loan.    Mr. Wright admits on information
and belief that a dispute arose between William N. Brown
and Leaton & Upton relative to two notes made by Leaton
& Upton, and held by the Commercial Bank, amount-
ing to $2,447.90, but denies that Wells, Stone & Co.
were in any way parties to the arbitration agree-
ment, and says that such arbitration was never acted
upon, and has been abandoned, and, as to the alleged
agreement claimed to have been made by Wells, Stone
& Co. per Sharp, that he has no knowledge about it,
and that Mr. Stone, who would have had knowledge
upon that subject, is dead, and he neither admits nor
denies the agreement, but leaves complainant to its proof
thereof.    He denies that any sum remains in the hands of
Wells, Stone & Co. in trust for the payment of Leaton &
Upton's indebtedness to complainant, or that they should
account to complainant for, or pay it, any sum.    He avers
that in May, 1894, acting for Wells, Stone & Co., he
made full settlements with the Commercial Bank, and
with Brown and Leaton and their wives, Minnie K. Brown

and Stella G. Leaton, and took full and complete releases from them, and that, at the time of such settlement, the renewals of the two notes, aggregating $2,447.90, the subject of the dispute between Brown and Leaton & Upton, were still owned by the Commercial Bank, and were covered by the releases then given, so far as any claim thereon against Wells, Stone & Co. is concerned, and that, if complainant has such notes, it obtained them after such date as dishonored paper, and has no rights thereunder as against Wells, Stone & Co. He also avers that complainant has omitted necessary parties in not making William N. Brown and the representatives of Mr. Leaton parties defendant, and prays benefit of demurrer.

Proofs were taken in open court, and the bill dismissed.

*John E. More*, for complainant.

*Gilbert M. Stark*, for defendant Wright.

GRANT, C. J. (*after stating the facts*). This bill was filed by the First National Bank before a receiver was appointed, and the bank will be treated in this opinion as the complainant. The bank insists that this is a trust fund, to which it is entitled as the owner of the notes. Defendant Wright insists upon the correctness of the decree for the following reasons:

1. That there is no evidence to prove the authority of Sharp to sign the alleged agreement for Wells, Stone & Co.
2. That the bill is defective for omitting necessary parties, viz., Brown and the representatives of the estate of Leaton, deceased.
3. That it is not a trust fund.
4. That the First National Bank took these notes after they were past due, and therefore subject to all equities and defenses which Wells, Stone & Co. would have as against the original holders.

Wells and Stone died before this bill was filed. Defendant Wright is the surviving member of the firm. Leaton & Upton were indebted in about $72,000, of which there was due to the Commercial Bank about $20,000,

and to the First National Bank about $9,000. Mr. Wright was the president and the largest stockholder of the Commercial Bank, and insisted upon the payment of Leaton & Upton's indebtedness to it. Judge Moore, of Saginaw, was the attorney for Wells, Stone & Co., negotiated the transaction, and drew the contract between the parties. He, in behalf of Wells, Stone & Co., insisted that Mr. Leaton should be absolutely discharged from all liability for the debts of Leaton & Upton, and informed Mr. Fancher and the other parties that Wells, Stone & Co. would have nothing to do with any disputes between Leaton & Upton and Brown & Leaton and Brown as to their liability on the disputed notes, and would only make this loan on condition that Mr. Leaton should be absolutely discharged. This was evidently assented to. Discharges were executed, and $16,595.54 was paid to the Commercial Bank, and $6,396.83 to the First National Bank, by Wells, Stone & Co., each bank making a rebate in order to carry out the arrangement. The other creditors formed a syndicate, took other lands in payment of the debts due them, and released Leaton. By the agreement between Brown & Leaton and Wells, Stone & Co. for the loan of this $36,000, Brown & Leaton agreed to cut and manufacture the logs upon these lands into lumber, and turn the proceeds over to Wells, Stone & Co., in payment of the loan and for advances which they had agreed to make. Brown & Leaton appear to have run behind, and to have become indebted to Wells, Stone & Co. in an amount much greater than the $36,000. On May 15, 1894, they made a settlement, which was signed by Brown and Leaton and their wives, by Mr. Wright, and the executors of the last wills and testaments of Mr. Wells and Mr. Stone. This settlement was sweeping in its provisions, including all actions, causes of action, suits, debts, claims, and demands, in law or in equity, which said first parties, and each of them, had against Wells, Stone & Co., and the latter released and discharged Brown & Lea-

ton from all indebtedness to them.   On May 16, 1894, the Commercial Bank executed a release to Wells, Stone & Co. and said Wright and the several estates of Wells and Stone from all claims and demands of every kind growing out of said agreement of July 8, 1889, and also another agreement which bore date January 12, 1889. When these settlements were made, the bank delivered to Mrs. Brown and Mrs. Leaton notes to the amount of $38,000, including the two in question.   The title to some of this land conveyed to the bank under the settlement stood in the names of Mrs. Brown and Mrs. Leaton. Brown & Leaton negotiated the arrangement by which these notes were delivered.   Afterwards Mrs. Brown transferred the note to the First National Bank, the sole consideration being the release of her husband from all the paper at the bank of which he was either indorser or maker.   Brown at that time was insolvent.   The release of Mr. Leaton upon similar notes was the consideration for the transfer by Mrs. Leaton of the note she held, Mr. Leaton also being insolvent.

Under this state of facts, we think there are two complete answers to the complainant's case:

1. The settlement of May 15, 1894, was signed by Mr. Brown, Mrs. Brown, Mr. Leaton, and Mrs. Leaton, and settled all transactions between them and Wells, Stone & Co.   The settlement with the bank on May 16, 1894, recited the settlement between Brown & Leaton and Wells, Stone & Co., the transfer of certain lands to the bank, and the bank, in consideration thereof, released and discharged Wells, Stone & Co.   By this settlement, Brown, Leaton, and their wives released Wells, Stone & Co. from all liabilities, which included all claim to this fund which Brown and Leaton, or either of them, ever had.   They made no reservation of this claim, and as to them it was settled and disposed of.   They could not revive the claim by having the notes transferred to their wives by the Commercial Bank.   Evidently, the bank considered Brown & Leaton insolvent, and released them

from liability on the notes they held against them, and surrendered them.   It was of no consequence to whom they were transferred by the bank.

2.  If it be conceded that this fund was retained for the purpose stated, complainant has not shown that it was entitled to it.   By the terms of the paper signed by Sharp, Wells, Stone & Co. were only under obligation to pay the money to the holder of the notes if it should be determined that Leaton & Upton ought to pay them.   As we understand the situation, Leaton & Upton were parties to the notes, and under legal obligations to pay to the then holder, the Commercial Bank; but it was insisted that equitably, and as between Leaton & Upton and Brown & Leaton and Brown, the latter should pay, and that was the question submitted to arbitration.   That question has not been determined.   There is no evidence in this record by which we can determine it.   If it belonged to Brown & Leaton and to Brown to pay them, they have been more than paid by Wells, Stone & Co., and they have settled it.   Neither Brown nor Leaton nor their wives could recover against Wells, Stone & Co., and, if they could not, neither can their transferee, the bank, which purchased after due.

It is unnecessary to discuss the other questions raised. The decree is affirmed, with costs.

The other Justices concurred.